UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,
for the use & benefit of
INDUSTRIAL TURNAROUND CORP.,

        Plaintiff,

v.

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

        Defendant.

Action No. 3:09–CV–018

MEMORANDUM OPINION

I. INTRODUCTION

THIS MATTER is before the Court on a Motion by plaintiff Industrial TurnAround Corp. (hereinafter "ITAC") to confirm an arbitration award. (Doc. No. 17.) Defendant Travelers Casualty & Surety Company of America (hereinafter "Travelers") opposes this Motion and has filed its own Motion to Vacate the underlying award. (Doc. No. 20.) The dispute between the parties is grounded in a series of delays that occurred during the performance of a government construction contract on which Travelers was a Miller Act, 40 U.S.C. § 3131, et seq., surety for the payment bond posted by general contractor GSC Construction, Inc. (hereinafter "GSC"). These Motions present the Court with two questions: First, may the Court disturb the underlying award to ITAC? Second, is the award confirmable against Travelers in this proceeding?

1

The Court finds that the answer to the first question is no and that the answer to the second is yes. Thus, ITAC's Motion will be granted and Travelers' denied.

II. BACKGROUND

A. The GSC General Contract and ITAC Subcontract

In December of 2005, GSC won a contract (hereinafter "the General Contract") from the United States Army Corps of Engineers to construct a combined arms training facility at Fort A.P. Hill in Virginia. In conformity with the terms of the Miller Act, see 40 U.S.C. § 3131(b)(2), GSC furnished the United States with a "payment bond" for the protection of all persons supplying labor and/or materials for the project. Travelers served as surety on the bond and in its agreement with GSC stated: "We, the Principal and Surety[], are firmly bound to the United States of America . . . in the above penal sum [of $6,344,502.00]. For payment of the penal sum, we bind ourselves jointly and severally." (Comp., Ex. 1, Payment Bond.)

In January of 2006, ITAC won a subcontract to provide electrical construction services required under the General Contract on behalf of GSC. The written subcontract (hereinafter "Subcontract") between GSC and ITAC contained several provisions addressing the resolution of disputes between the two parties and changes to the work.

First, Article 6 of the Subcontract required that, with the exception of claims related to the rejection of ITAC's work by GSC for failing to comply with the General Contract, or by the owner's representative due to non-compliance or issues of "aesthetic effect", "any

claim arising out of or related to this Subcontract . . . [and not] waived in this Subcontract, shall be subject to arbitration as the exclusive remedy." (Def.'s Brief Sup. Mot. Compel Arbitration, Ex. 1, Subcontract, Arts. 4.1.5 & 6.2.1.) Further, the "final award rendered by the arbitrator or arbitrators shall be subject to judicial review for errors of law and findings not supported by substantial evidence, and subject to such review, judgment may be entered upon it in accordance with [the] applicable law in any court having jurisdiction thereof." (Subcontract, Art. 6.2.6.)

Second, Article 5 of the Subcontract governed the manner by which changes could be made to the work required. The owner "may make changes in the Work by issuing Modifications to the Prime Contract", which, upon notice from GSC, would require ITAC to cease ordering supplies or performing work inconsistent with the change. (Subcontract, Art. 5.1.) Similarly, "the Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract . . . the Subcontract Sum and Subcontract Time being adjusted accordingly." (Subcontract, Art. 5.2.) Where this occurred, ITAC was required to "submit promptly to the Contractor written copies of a claim adjustment to the Subcontract Sum and . . . Time for such revised Work" prior to commencing the work. (Subcontract, Art. 5.2.) ITAC also agreed that, upon the request of GSC, it would "change any sequence of work" and that "if such a change does cause a delay or increases the Subcontractor's costs, a change order will be issued extending the time of completion and/or making changes in costs." (Subcontract, Art. 5.4.) However, ITAC was required to "advise the Contractor in writing

within 5 days of any change ordered . . . which [the] Subcontractor contends warrants an extension of time or change in payment." (Subcontract, Art. 5.4.) Lastly, the Subcontract stated "[i]n the event of any change in the Work or change in the sequence or timing of the Work that causes delay to Subcontractor, or in the event of any other delay, inefficiency or disruption in the Work of Subcontractor, the sole remedy therefore shall be an extension of time for Subcontractor's performance issued by the Owner." (Subcontract, Art. 5.5.)

Third, Article 4.7 of the Subcontract stated that:

"If the Contractor does not pay the Subcontractor . . . within seven days from the time payment should be made . . . the Subcontractor may, without prejudice to any other available remedies, upon seven days' written notice to the Contractor, take allowed steps of this Subcontract until payment of the amount owing has been received. The Subcontract then shall, by appropriate adjustment, be increased by the Amount of the Subcontractor's reasonable costs for steps taken."

The Subcontract called for all work to be complete by February 8, 2007.

### B. Performance of the Subcontract

ITAC began work on the project on or about April 17, 2006, but a series of changes to the specifications in the General Contract and subsequent communication breakdowns between ITAC and GSC resulted in numerous change orders, modifications to ongoing work, and the reworking of completed construction. Neither party appears to have been in compliance with the change order requirements of Article 5. ITAC claims that the last date on which it furnished labor and materials under the Subcontract was January 14, 2008, nearly one full year after work was supposed to have been completed. ITAC claims that it was never fully compensated for the work described in the Subcontract and for expenses related to the extension of the work. GSC claims that the Corps is responsible for the

4

delays and it has filed a claim against the Corps before the Armed Services Board of Contract of Appeals (<u>hereinafter</u> "ASBCA"). GSC invited ITAC to submit a delay claim under the contract and is sponsoring ITAC's delay claims within the ASBCA action.

C. ITAC's Claims against GSC and the Arbitration

After failing to obtain payment on its claims from GSC, ITAC sought to recover against the payment bond put up by Travelers as GSC's surety. In its Complaint, filed in January of 2009, ITAC alleged that GSC breached the Subcontract's payment terms and that Travelers was thus jointly and severally liable for $416,063.11 under the terms of the bond and the Miller Act. On January 30, 2009, Travelers filed a motion to stay this action and to compel arbitration between ITAC and GSC under the terms of the Subcontract. ITAC did not file any opposition to the motion and on February 13, 2009, the Court stayed all proceedings pending the outcome of the arbitration. However, on the *eve* of the arbitration hearing Travelers filed another motion with this Court seeking to stay the arbitration itself, on the grounds that the United States was a necessary party that had not been joined and could not be joined. ITAC opposed this motion on the grounds that although the United States might be a necessary party, it was not an indispensable party. The Court denied Travelers' motion and ITAC and GSC proceeded to arbitration.

The arbitration hearings between ITAC and GSC took place on November 17 and 18, 2009, in Richmond, Virginia. During the course of the arbitration, ITAC brought claims for $75,783.71 in outstanding payments on the Subcontract and an additional $516,225.47 for various costs arising from the extension of the work, productivity loses, and associated

overhead. GSC claimed that ITAC had been responsible for a 200 day delay in the project and sought indemnity for $337,000.00 in liquidated damages from ITAC, based on a rate set in the General Contract. The record closed on December 20, 2009, and on January 18, 2010, the Arbitrator issued a ruling for ITAC. The Arbitrator found that there was no evidence that GSC paid any liquidated damages to the Corps, and thus refused to recognize GSC's claim against ITAC. In considering ITAC's claims, the Arbitrator concluded that since GSC had invited ITAC to submit a delay claim to the Corps through the ASBCA process and failed to follow the provisions of the Subcontract governing periodic payments and change orders, GSC had waived its right to insist on a strict application of the "no damage for delay" provision of Article 5. After considering the damages claimed by ITAC, the Arbitrator concluded that GSC was liable for $74,863.71 on the outstanding subcontract balance, $123,367.00 for extended personnel costs, $9,234.00 in site operations costs, and $9,415.00 in "home office overhead" for a total award of $216,879.71.

### D. Motion to Confirm and Motion to Vacate

On April 6, 2010, ITAC returned to this Court and moved for a confirmation of the arbitration award against Travelers. Meanwhile, GSC filed an application to vacate the arbitration award with the Richmond City Circuit Court. Travelers subsequently opposed ITAC's Motion to Confirm and filed its own Motion to Vacate with this Court. ITAC contends that since it was awarded damages against GSC in the arbitration proceeding, it is entitled to collect that award from GSC's surety, Travelers, and that this Court should

6

confirm the Arbitrator's decision and award interest, fines, and costs. Travelers objects that since it was never a party to the underlying arbitration, the award must first be confirmed against GSC before any damages can be sought from it as a surety. Further, Travelers objects that the Arbitrator's award exceed his authority under Virginia law and that since the issue of the award's validity has already been raised in the Richmond City Circuit Court, this Court should abstain from ruling on ITAC's Motion.

III. DISCUSSION

A. The FAA compels this Court to uphold the Arbitrator's award

This Court's treatment of arbitration awards is governed by the provisions of the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C. § 1, et seq., which "compels judicial enforcement of a wide range of written arbitration agreements". Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). The scope of this Court's review when considering an arbitration award is similarly limited. See Upshur Coals Corp. v. United Mine Workers of America, Dist. 31, 933 F.2d 225, 227 (4th Cir. 1991)(special degree of deference); RZS Holdings AVV v. PDVSA Petroleos S.A., 598 F.Supp.2d 762, 765 (E.D.Va. 2009)(confirmation a "summary proceeding"). Under the FAA, a district court may only vacate an arbitration award where it was procured by "corruption, fraud, or undue means", where arbitrators showed "evident partiality or corruption", where the arbitrators were guilty of certain procedural "misconduct" in the scheduling or conduct of a hearing, or where the arbitrators "exceeded their powers" or "so imperfectly executed them that a mutual, final,

7

and definite award upon the subject matter submitted was not made." 9 U.S.C. §§ 10(a)(1)-(4); but see 9 U.S.C. § 11 (allowing for corrections of mathematical errors, awards on claims not submitted, or of imperfections not touching the merits). The standards for vacating an arbitrator's award are similar under Virginia law. See Va. Code § 8.01-581.10 (also allowing an award to be vacated where there was no arbitration agreement). The "errors of law and findings not supported by substantial evidence" language set forth in the Subcontract appears to track these standards.

In its Motion to Vacate and its other arguments before this Court, Travelers has not shown that the Arbitrator's award is compromised by any of the flaws outlined in 9 U.S.C. § 10, Virginia law, or the Subcontract. Travelers has advanced two arguments as to why the Arbitrator exceeded his powers in handing down his decision. However, neither of these arguments are meritorious. First, Travelers has argued that because the Subcontract allows for the rejection of work that does not conform to the terms of the General Contract, "to the extent that the Arbitrator made determinations as to GSC's acceptance or rejecting of ITAC's work on certain change orders . . . the Arbitrator exceeded the scope of his authority . . ." (Def.'s Reply Sup. Mot. to Vacate at 4 (citing Arbitrator's Award at 5).) Even if this is true " . . . to the extent that the Arbitrator made determinations as to GSC's acceptance or rejection of ITAC's work . . . ", Travelers has not shown that the Arbitrator's award was actually based on a reversal of a decision to reject non-conforming work made by either the owner's representative or GSC and this Court will not upset the award based on mere speculation. See, e.g., United States ex rel. Skip Kirchdorfer v. Aegis/Zublin Joint Venture,

869 F.Supp. 387, 390 (E.D.Va. 1994)(Kirchdorfer II)(declining to disturb arbitration award on mere possibility of disallowed damages).  Second, Travelers has argued extensively that the "no damages for delay" provision of Article 5.5 limits ITAC to the "sole remedy . . . [of] an extension of time for [it's] performance" and that the Arbitrator's award of delay related damages was thus outside the scope of his powers.  The Arbitrator considered this clause, however, and found it to be in conflict with the other change related provisions of Article 5.  In light of the evidence before him, the Arbitrator concluded that, given the course of performance and the conflicting language in the contract, GSC had waived any right to insist on strict compliance with this particular provision of the Subcontract.  Since the Subcontract commits any dispute "arising out of or related to [it]" to mediation and arbitration, it does not appear that in resolving this question of contract interpretation the Arbitrator exceeded his powers.  While it may be, as Travelers insists, that a no damage for delay claim is enforceable under Virginia law, the mere validity of such a provision does not compel its recognition here, in light of the Arbitrator's finding that Travelers had waived the right to assert it.

In light of the foregoing, the Court finds that Travelers has failed to show that the Arbitrator's award is infirm under either the FAA, Virginia law, or the terms of the subcontract.  Thus, the Court may not disturb the Arbitrator's decision regarding either liability or damages.

### B.  The Arbitrator's Award is confirmable against Travelers

In order to determine whether the Arbitrator's award may be confirmed against Travelers in this proceeding, the Court must first consider the nature of the relationship between Travelers and GSC. The Miller Act requires general contractors like GSC to furnish the United States with certain bonds, including a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract" and to arrange for a surety on the bond. 40 U.S.C. § 3131(b)(2). Under the Miller Act, "every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under [§ 3131] . . . that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought . . ." 40 U.S.C. § 3133(b)(1). Such a bond must have a surety that is satisfactory to the contracting officer in charge of the project, see 40 U.S.C. § 3131(b)(2), and since the surety's purpose is to insure that a subcontractor's claims are paid in a timely fashion, see United States ex rel. Moore Bros. Const. Co. v. Brown & Root, Inc., 962 F.Supp. 838, 841-42 (E.D.Va. 1997) aff'd in part, rev'd in part, 207 F.3d 717 (4th Cir. 2000)(surety cannot avail itself of "pay when paid" defense available to general contractor given 90 day provisions on Miller Act), numerous courts have adopted the position that "a judgment against a principal conclusively establishes the liability of a surety" who has notice of the proceedings and an opportunity to participate. United States ex rel. MPA Construction, Inc. v. XL Speciality Insurance Co., 349 F.Supp.2d 934, 842 (D.Md. 2004)(quoting United

States ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelly Corp., 995 F.2d 656, 661 (6th Cir. 1993)(Kirchdorfer I).)

While both parties appear to agree on this basic principle regarding a surety's liability, they disagree over the finality and preclusive effect of the Arbitrator's decision. ITAC contends that under the rule of Kirchdorfer I, and the decisions of courts which have followed it, the award against GSC may be confirmed against Travelers, despite the fact that Travelers was not a party to the underlying arbitration. Travelers, meanwhile, contends that until the award is confirmed against GSC in a proceeding before a Virginia Court, there is no judgment on which it can be held liable. The source of law regarding the preclusive effects on a surety of an arbitrator's judgment against a principal is admittedly uncertain. See, e.g., United States ex rel. Frontier Construction Inc. v. Tri-State Management Company, 262 F.Supp.2d 893, 895 (N.D.Ill. 2003)(discussing absence of clear authority), see generally, 18b Charles Wright, et al., Federal Practice and Procedure, § 4475.1 (2d ed. 2002)(same). When this Court has previously considered the confirmation of arbitration awards against Miller Act sureties, it has relied on both state and federal law. In United States ex rel. Skip Kirchdorfer v. Aegis/Zublin Joint Venture, 869 F.Supp. 387, 390 (E.D.Va. 1994)(Kirchdorfer II), the Court looked to the language of the subcontract, which stated that the arbitrator's award would be final according to the law of any court having jurisdiction, before applying the FAA's limitations on review and confirming the award. However, in Moore Bros., the Court considered Virginia law before determining that a confirmed arbitration award bound a surety. See 962 F.Supp. at 842. What unites these

11

cases, however, is the insistence of this Court and others on the surety being given notice of an arbitration and an opportunity to participate in it. See, e.g., Frontier, 262 F.Supp.2d at 895 (considering state and federal law and denying preclusive effect since surety had no notice of proceeding that resulted in default judgment against principal) and Moore Bros., 962 F.Supp. at 842 (relying on state law concepts of privity to bind non-party whose interests had been represented).

When Travelers' objections are considered in light of its obvious knowledge of the arbitration and its opportunity to participate therein, it is clear that the objections must fail. In this case, Travelers not only had notice and an opportunity to participate in the underlying arbitration between ITAC and GSC, its lawyers were actively involved in GSC's defense. Although Travelers was never itself a party to the arbitration, this did not prevent it from invoking the arbitration clause in the contract between GSC and ITAC, nor did this prevent Travelers from seeking to stay the arbitration between GSC and ITAC because ITAC had allegedly failed to join a necessary and indispensable party. Indeed, it was not until Travelers filed its opposition to ITAC's Motion to Confirm that any question was ever raised as to the joint identity of Travelers and GSC, the applicability of the FAA, or this Court's jurisdiction over the entire matter. Finally, the subcontract which Travelers invoked to send this matter to arbitration states that "any claim arising out of or related to this Subcontract", with certain exceptions, is committed to mediation and arbitration, and that judgment may be entered upon the "final award by the arbitrator" in "accordance with the applicable law in any court having jurisdiction thereof." Since this Court clearly has

jurisdiction over ITAC's Miller Act claim, and it is the substance of that claim which was subject to arbitration, neither the law nor the provisions of the subcontract prevent this Court from confirming the award against Travelers.[1]

While Travelers has contended that this Court should refrain from confirming any award in light of the proceedings now pending in the Richmond City Circuit Court, this Court is not aware of any decision in that matter. Further since neither court has assumed exclusive jurisdiction over the property in dispute, this forum is no less convenient for either party, the litigation in the state court is likely to be protracted and duplicative, the Miller Act grants exclusive jurisdiction over its claims to this Court, and prompt payment of claims like ITAC's is a central purpose of the Act, the Court finds that confirmation would be a proper exercise of its jurisdiction. See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16-20 (1983)(discussing preemption and abstention in context of Miller Act suits).

## IV.  CONCLUSION

In light of the foregoing, the Court finds that ITAC has shown that the Arbitrator's award should be confirmed against Travelers and that Travelers has failed to show that the

---

[1] While Travelers has made much of the Arbitrator's decision not to give bite to the "no damages for delay" provision in the Subcontract, it does not appear to this Court that the Arbitrator's award of "damages" exceeded the scope of the "claims" payable under the Miller Act, as those damages consisted primarily of sums to which ITAC was entitled under the change order provisions of the Subcontract. See Kirchdorfer II, 869 F.Supp. at 394-95 (finding that while consequential damages are not recoverable under Miller Act, delay related losses are not barred where they arise from labor and materials actually supplied). Further, Article 4.7 of the Subcontract clearly contemplates that costs connected with a dispute over the contract may be incorporated into the amount due under the Subcontract.

award should be vacated or that this Court should abstain from enforcing it. Therefore, ITAC's Motion to Confirm is GRANTED and Travelers' Motion to Vacate is DENIED.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this  11th  day of August 2010